**IN THE COURT OF APPEALS OF IOWA**

No. 23-0590
Filed June 21, 2023

**IN THE INTEREST OF E.S.,**
**Minor Child,**

**S.S., Mother,**
　　Appellant.
_____

　　Appeal from the Iowa District Court for Butler County, Peter B. Newell, District Associate Judge.

　　A mother appeals the termination of her parental rights. **AFFIRMED.**

　　Elizabeth M. Wayne of Papenheim Law Office, Parkersburg, for appellant mother.

　　Brenna Bird, Attorney General, Anagha Dixit, Assistant Attorney General, for appellee State.

　　Mark Milder, Denver, attorney and guardian ad litem for minor child.

　　Considered by Ahlers, P.J., and Badding and Chicchelly, JJ.

**AHLERS, Presiding Judge.**

The juvenile court terminated the parental rights of the parents of E.S., a child born in 2021.  Only the mother appeals.

We conduct de novo review of orders terminating parental rights.  *In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022).  Our review follows a three-step process that involves determining if a statutory ground for termination has been established, whether termination is in the child's best interests, and whether any permissive exceptions should be applied to preclude termination.  *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021).

The juvenile court terminated the mother's rights under Iowa Code section 232.116(1)(h) (2023), which authorizes termination when

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The mother only challenges the fourth element by arguing the State failed to establish the child could not be returned to her *care*.  As a preliminary observation, we note that section 232.116(1)(h)(4) requires proof that the child cannot be returned to a parent's *custody* not *care*.  We do not make this observation about the blurring of the distinction between care and custody as a criticism of the mother.  Indeed, we have most likely contributed to the blurring by being imprecise on the distinction at times.  *See, e.g.*, *In re K.H.*, No. 22-0964, 2022 WL 3421910, at *2–

3 (Iowa Ct. App. Aug. 17, 2022) (referring to the fourth element as imposing a requirement that the child cannot be returned to the care of a parent); *In re C.V.*, No. 18-0851, 2018 WL 4361061, at *1–2 (Iowa Ct. App. Sept. 12, 2018) (same). But, even viewing the mother's claim as asserting the child could have been returned to her custody, we are not persuaded by her claim.

When assessing whether the fourth element is satisfied, we do not consider what might happen in the future; rather, we consider only whether the child could be returned to the parent's custody at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4) ("There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time."); *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (holding that "at the present time" means at the time of the termination hearing). The mother's petition on appeal suggests her purported ability to assume custody is qualified on her ability to secure "family assistance" to help care for the child and concedes "at the time of the termination hearing there was not family that could appropriately assist." This concession suggests the mother is aware she was not equipped with the necessary parenting skills to safely assume custody of the child at the time of the termination hearing. Our de novo review supports that conclusion.

This family came to the attention of the Iowa Department of Health and Human Services following the child's birth due to hospital workers' concerns regarding the mother's ability to care for the child. She has "a number of personal challenges including a full-scale IQ of 61[,] indicating a mild intellectual disability[,]

and anxiety." The mother admitted to a caseworker that it is difficult for her to parent the child and she does not always know how to meet the child's needs.

The mother requires direct instruction to complete basic, everyday tasks in order to take care of herself. She requires direction on how to clean her home. She also requires instruction on how to fold clothing and how to read cooking instructions on a product container. Her need for guidance carries over to visits with the child. During visits, the mother requires "repeated skill building and learning about appropriate foods, appropriate activities, [and] safety concerns in the environment." She "needs reassurance as to her decisions regarding feeding and diapering [the child]. She requires reminders about safe care and hygiene around [the child] and finds prompts on age-appropriate interaction helpful." The mother "often verbalizes understanding and intent but continues to struggle with implementation and follow through."

Given the mother's need for direct instruction to complete the most basic everyday tasks, parenting or otherwise, we believe the mother is not equipped with the necessary skills to be able to safely parent the child. We agree with the juvenile court that the child could not be safely returned to the mother's custody. Accordingly, a statutory ground authorizing termination is satisfied.

Next, we address the mother's claim termination is not in the child's best interests. She claims termination is not in the child's best interests because they are bonded, implicating a permissive exception to termination.[1] Consideration of

---

[1] Section 232.116(3)(c) allows the court to forgo termination when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."

the parent-child bond is not a part of our best-interests analysis. *See In re A.B.*, No. 23-0235, 2023 WL 3335422, at *2 (Iowa Ct. App. May 10, 2023) ("In considering the best interests of the children, we are required to use the best-interests framework set out by our legislature. And that framework does not include the word 'bond.'" (internal citation omitted)). Instead, when making a best-interests determination, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (quoting Iowa Code § 232.116(2)). So we will first consider the child's best interests and then consider the parent-child bond as a potential exception to termination.

We conclude termination is in the child's best interests. The mother struggles to meet her own basic needs, and she cannot meet the most basic needs of a child. And this child, in particular, requires attentive care. She is delayed in her developmental milestones. The child requires both speech and physical therapy on a weekly basis. We do not believe the mother can provide the diligent and consistent parenting the child requires. Conversely, the child is attached to her foster family, and she is well-cared for in the foster family's home. The child is also adoptable. Termination of the mother's rights is a necessary step to adoption with a family that can meet the child's unique needs. We agree termination of the mother's rights is in the child's best interests.

Finally, we address the mother's contention that we should nonetheless forgo termination due to her bond with the child. *See* Iowa Code § 232.116(3)(c). It is her burden to establish applicability of an exception to termination. *See In re*

*A.S.*, 906 N.W.2d 467, 475–76 (Iowa 2018). There is no doubt the mother loves the child, and the child shares an attachment to the mother. Yet the mere "existence of a bond is not enough." *See In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021). Instead, the bond must be so significant that severing it would be manifestly detrimental to the child. *Id.* The record does not establish a bond of this magnitude. While there is a bond between mother and child, the child is primarily attached to her foster family. Based on this record, the mother has not met her burden to establish that termination of her rights would be detrimental to the child such that we should apply the close-bond exception of section 232.116(3)(c).

**AFFIRMED.**